710 So.2d 1164 (1998)
Gary J. BIRDSALL, et al.
v.
REGIONAL ELECTRIC & CONSTRUCTION, INC., et al.
No. 97 CA 0712.
Court of Appeal of Louisiana, First Circuit.
April 8, 1998.
*1166 Joseph L. Waitz, Houma, for Plaintiffs-Appellees Gary J. Birdsall, et al.
*1167 P.M. Donovan, James F. Ryan, Metairie, for Defendants-Appellants Regional Electric & Construction, Inc. and Allstate Insurance Company.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON,[1] J. Pro Tem.
REMY CHIASSON, Judge Pro Tem.
Dr. Gary Birdsall, MD, in his individual capacity and as administrator of his minor children, and his wife Wanda Birdsall brought suit against Regional Electric & Construction, Inc. (Regional) alleging that Dr. Birdsall suffered personal injuries when he struck his head on a board that was protruding out of a work truck owned by Regional. Wanda Birdsall and their five minor children sought damages for loss of consortium.

FACTS
According to the evidence elicited at trial, Dr. Birdsall returned home from a hunting trip on December 21, 1993, at approximately 4:30 in the afternoon. He noticed a Regional work truck in his driveway and commented about such to Mark Bourg, a fellow hunter, who gave him a ride home. Mr. Bourg parked his vehicle next to the Regional truck and they both alighted from the vehicle. Dr. Birdsall crossed in front of Mr. Bourg's vehicle and the Regional vehicle and then turned and walked along the side of the Regional vehicle until he reached his two sons who were playing in the yard. Dr. Birdsall spoke with each of his sons. Dr. Birdsall then turned to walk behind the Regional truck so he could get his belongings out of the back of Mr. Bourg's truck. In the process, he collided with a board protruding approximately six to seven feet from the rear of the Regional truck.
Mr. Bourg testified that he was standing approximately three feet from the Regional truck when the accident occurred. He turned around when he heard a noise and saw Dr. Birdsall walking toward him bent over and rubbing his head. Dr. Birdsall told him that he hit his head on a board and asked Mr. Bourg to examine his head. The evidence also revealed that the board was not flagged in any manner to make it more noticeable. Based upon these facts, the plaintiffs' safety expert concluded that the board presented a hazard.
Immediately after the accident, Mr. Birdsall began experiencing headaches, pain and intermittent numbness in his hands. A CAT scan revealed that he had a herniated cervical disc which eventually required a cervical fusion on August 5, 1995.
After trial, the jury found Regional 80 percent at fault and Dr. Birdsall 20 percent at fault. The jury made the following awards:

a) Past Medical Expenses $ 20,138.60
b) Future Medical Expenses
 $ 0.00
c) Past and Future Pain
 and Suffering, both Physical
 and Mental $150,000.00
d) Past Loss of Income $131,000.00
e) Loss of Future Earning
 Capacity $225,000.00
 Total $526,138.60
Loss of Consortium [of Mrs.
 Wanda Birdsall] $ 10,000.00
a) Loss of Consortium of
 Gary Birdsall, Jr. $ 1,250.00
b) Loss of Consortium of
 Paul Birdsall $ 1,250.00
c) Loss of Consortium of
 Celeste Birdsall $ 1,250.00
d) Loss of Consortium of
 Hannah Birdsall $ 1,250.00

Regional suspensively appealed, alleging the following assignments of error: (1) the jury erred in finding Regional at fault for this accident, (2) the jury erred in finding Dr. Birdsall only 20 percent at fault, and (3) the jury erred in the amount of damages awarded to plaintiff. Plaintiffs answered the appeal, seeking an increase in past and future lost earnings and damages for frivolous appeal.

NEGLIGENCE
A court of appeal may not set aside a jury's findings absent manifest error. Where there is a conflict in the testimony, *1168 reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. If the jury's findings are reasonable in light of the record reviewed in its entirety, we may not reverse even though we may have weighed the evidence differently if sitting as the trier of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Regional contends on appeal that there existed contradictions in Dr. Birdsall's and Mr. Bourg's testimony regarding the truck with the protruding board. Consequently, Regional argues that the plaintiffs failed to prove that Regional was responsible for the accident. We disagree. The record contains ample testimony from which a reasonable jury could conclude that the truck with the protruding board belonged to Regional; thus, we cannot say that the jury was manifestly wrong.
Next Regional contends that it owed no duty to Dr. Birdsall because he was its general contractor and thus responsible for safety at the work site. Alternatively, Regional contends that even if a duty did exist, it did not encompass the facts of this case because Dr. Birdsall was blind in his left eye and he was walking without watching where he was going.
Although Dr. Birdsall did act as general contractor while constructing his home, the work Regional was performing on the date of the accident was remedial work after completion of the home. The Birdsalls were living in their new home at the time of the accident. Under these circumstances, we cannot say that the jury was manifestly erroneous in determining that Regional either shared the duty of providing a safe work place or was solely responsible for the condition of the work truck on the date of the accident.
We further find no merit in Regional's argument that it had no duty to prevent the accident in this case because the plaintiff was not watching where he was going. The duty to properly flag any item protruding from a pickup truck is for the purpose of making the object more visible. To say that the plaintiff's failure to see the board is not encompassed in this duty is to ignore the very purpose of the duty. If the board had been properly flagged, it is possible that Dr. Birdsall would have noticed it upon entering the driveway or at any other time before he turned into it unaware of its presence. We cannot say that the jury erred in determining that Regional owed a duty to Dr. Birdsall under the circumstances of this case.

COMPARATIVE FAULT
Regional also contends that the jury erred in assessing Dr. Birdsall with 20 percent of the fault. Regional argues that Dr. Birdsall had a duty, as a pedestrian, to see those obstructions in his pathway which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances.
It is well settled that the allocation of comparative negligence is a factual matter within the sound discretion of the trier of fact and such determination will not be disturbed on appeal in the absence of manifest error. Haydel v. Hercules Transport, Inc., 94-1246, p. 19 (La.App. 1st Cir. 4/7/95); 654 So.2d 418, 430, writ denied, 95-1172 (La.6/23/95), 656 So.2d 1019. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for its finding, the appellate court should not disturb this finding. Daigle v. Legendre, 619 So.2d 836, 840-841 (La.App. 1st Cir.), writ denied, 625 So.2d 1040 (La. 1993).
The Louisiana Supreme Court, in Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967, 974 (La. 1985), set forth guidelines for apportioning fault under the doctrine of comparative negligence. The court stated the following:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created *1169 by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Our consideration of these factors confirms that the majority of the fault lies with Regional. Dr. Birdsall's conduct was inadvertent, while the conduct of the Regional employees involved an awareness of the danger. Both employees testified that the board should have been flagged. Furthermore, placing the board in the truck at least an hour before transporting it served no significant purpose. Plaintiffs' safety expert testified to numerous alternatives to placing the board in the truck. After weighing the above factors, we find no error in the jury's decision assessing Dr. Birdsall with 20 percent of the fault.

PAIN AND SUFFERING
Regional contends that the jury awards of $150,000.00 for pain and suffering, $131,000.00 for past lost income, and $225,000.00 for loss of future earning capacity are excessive and not justified by the evidence.
LSA-C.C. art. 1999 affords the trier of fact much discretion in granting general damage awards. A reviewing court may disturb an award of general damages only after an analysis of the facts demonstrates that the trier of fact abused its "much discretion" in granting the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
In Youn, the Supreme Court of Louisiana articulated the following standard for reviewing general damage awards:
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.
Youn, 623 So.2d at 1260 (citations omitted).
Regional argues that the award for pain and suffering is excessive because the plaintiff did not miss any work other than the five weeks after his surgery and because he is not limited in his activities. While these facts may be true, the evidence also revealed that from the time of the accident until his surgery over a year and a half later, Dr. Birdsall suffered almost continuously with headaches, neck pain, arm pain and intermittent numbness in his hands. Dr. Birdsall took pain medication and underwent physical therapy to try to alleviate the pain. Dr. Birdsall also testified that although the surgery relieved a great deal of pain, he still experiences pain; he will likely continue to do so for the rest of his life according to the testimony of his neurosurgeon.
Based upon the particular injuries suffered by Dr. Birdsall under the circumstances of this case, we cannot say that the jury abused its discretion in awarding $150,000.00 for past and future pain and suffering.

PAST LOST WAGES
Regional next contends that the jury erred in awarding $131,000.00 in past lost wages.
At the time of the accident Dr. Birdsall owned his own medical practice. After the accident he saw an average of four to five fewer patients a day due to pain and fatigue. His proof of past lost wages and loss of future earning capacity was based on the number of patients he saw before and after the accident. The dollar value assigned to the patients he was unable to see was weighted in the same proportion as the patients he did see. Plaintiff's expert in economics, Dr. Randolph Rice, testified that based upon plaintiff's reduction in patients and the increase in allowable billing for Medicare and Medicaid patients, the plaintiff's past lost income through May of 1996, was $171,739.00.
Regional contends that the plaintiff's proof is flawed because he actually earned more after the accident than before the accident *1170 and because the plaintiff's calculations did not consider other factors which might have caused a decrease in the number of patients he saw. Plaintiffs in their answer to appeal contend that the jury erred in failing to award a sum consistent with the testimony of Dr. Rice.
The proof required to establish a claim for past lost wages was recently discussed in Rhodes v. State, through DOTD, 94-1758, p. 19 (La.App. 1st Cir. 12/20/96), 684 So.2d 1134, 1147, writ not considered, 97-0242 (La.2/7/97), 688 So.2d 487, as follows:
In order to recover for actual wage loss, a plaintiff must prove that he would have been earning wages, but for the accident in question.... Past lost earnings are susceptible of mathematical calculation from proof offered at trial and requires such proof as reasonably establishes the claim. This proof may consist of the plaintiff's own testimony. However, to allow a plaintiff to recover damages for lost wages when there is no independent support of plaintiff's claim is highly speculative. An award for past lost wages is not subject to the much discretion rule. (citations omitted).
Herein, the jury awarded $131,000.00 for past lost wages. The arguments raised by Regional on appeal were addressed by Regional's attorney during trial cross-examination of Dr. Birdsall and Dr. Rice. Regional offered no independent proof in support of these arguments. Because the jury awarded less than the plaintiff claimed, it is possible that they took into consideration the arguments Regional proposed. Furthermore, the nature of the loss of income in this case is speculative, as there are indeed many factors which could affect Dr. Birdsall's medical practice. Based on these reasons we find no error in the jury's award for past lost wages.

LOSS OF FUTURE EARNING CAPACITY
The jury awarded Dr. Birdsall $225,000.00 in future loss of earning capacity. Regional contends that the award is excessively high. In answer to the appeal the plaintiffs contend that the jury erred in failing to make an adequate award for loss of future earning capacity based upon the expert testimony of Dr. Rice.
Awards for lost future income are inherently speculative and are intrinsically unsusceptible of being calculated with mathematical certainty. Therefore, the trier of fact is given much discretion in fixing these awards. Hollenbeck v. Oceaneering International, Inc., 96 0377, pp. 19-20 (La. App. 1st Cir. 11/8/96), 685 So.2d 163, 175, writ denied, 97-0493 (La.4/4/97); 692 So.2d 421. When reviewing a trial court's award for loss of earning capacity, an appellate court should give deference to the trier of fact. Jackson v. Frisard, 96 0547, p. 13 (La.App. 1st Cir. 12/20/96), 685 So.2d 622, 629, writs denied, 97-0193 and 97-0201 (La.3/14/97); 689 So.2d 1386, 1387.
An award of loss of future income is not based merely upon the difference between a plaintiff's earnings before and after a disability injury. Rather, the award is predicated upon the difference between a plaintiff's earning capacity before and after a disabling injury. Hollenbeck, 96-0377 at pp. 16-17; 685 So.2d. at 173.
Dr. Rice determined that the present value of Dr. Birdsall's loss of future income was $650,878.00. This amount was based upon Dr. Birdsall's continued practice of medicine from the year 2000[2] until age 65, with four and one half fewer patients per day at the same fees as those Dr. Birdsall was charging in 1996.
Given the speculative nature of this type of award, we cannot say that the jury abused its discretion in awarding $225,000.00. The fact that Dr. Birdsall could have chosen to continue his contract with Oschner Hospital beyond the year 2000, as well as other variable factors, was within the jury's prerogative to consider in making this award.

FRIVOLOUS APPEAL
In answer to Regional's appeal the plaintiffs seek damages and attorney's fees for *1171 frivolous appeal pursuant to LSA-C.C.P. art. 2164.
The statute authorizing damages for frivolous appeals is penal in nature and must be strictly construed. Since appeals are favored, such penalties should not be granted unless they are clearly due; e.g.: when there are no serious legal questions, when it is manifest that the appeal is taken solely for the purpose of delay, when it is evident that appellants' counsel is not serious in advocating the view of law which he presents. LSA-C.C.P. art. 2164; Moody v. Moody, 622 So.2d 1376, 1381 (La.App. 1st Cir.), writs denied, 629 So.2d 1168 (La.1993).
In this case we find no indication that Regional's suspensive appeal was taken solely for the purpose of delay. We also believe from the arguments presented by Regional's counsel that he is serious in the position he advocates. Accordingly, damages for a frivolous appeal are not appropriate in this case.
For the reasons assigned, we affirm the jury verdict in all respects. Costs of this appeal are assessed against Regional.
AFFIRMED.
FITZSIMMONS, J., dissents in part and assigns reasons.
FITZSIMMONS, Judge, dissenting in part with reasons.
I respectfully dissent on the issues of fault and lost wages. Based on the facts of this case, I would have allocated to Dr. Birdsall at least 40% of the fault. I also find the basis for the award of lost wages too speculative. Dr. Birdsall did not suffer such a significant loss of income.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Dr. Rice used the year 2000 as the start of his calculation of loss of future income because Dr. Birdsall was under contract with Oschner Hospital until June 1, 2000.