STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0549

JUSTIN DEWANE PELLE

VERSUS

ERIC MUNOS AND GEICO CASUALTY COMPANY

Judgment Rendered: __**FEB 1 9 2020**__

* * * * *

On Appeal from the
Eighteenth Judicial District Court
In and for the Parish of West Baton Rouge
State of Louisiana
Trial Court No. 1043958

The Honorable J. Kevin Kimble, Judge Presiding

* * * * *

Mark A. Holden                          Attorney for Plaintiff/Appellant,
Baton Rouge, Louisiana                  Justin Dewane Pelle

Russell L. Potter                       Attorneys for Defendant/Appellee,
Andrew P. Texada                        Geico Casualty Company
Alexandria, Louisiana

* * * * *

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**PENZATO, J.**

Plaintiff, Justin Dewane Pelle, appeals a trial court judgment denying his motion for summary judgment and granting summary judgment in favor of defendant, Geico Casualty Company (Geico), and dismissing Pelle's claims against Geico with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The matter arises out of a motor vehicle accident that occurred on July 14, 2017, when Pelle's vehicle was rear-ended by a vehicle driven by Eric Munos. At the time of the accident, Munos was insured by Geico (Geico Liability) under a liability coverage policy numbered 4490-73-73-60. Pelle was insured by Geico (Geico Collision) under a policy of insurance numbered 4488-10-81-78, which afforded collision and comprehensive coverage.

Pelle made a claim for his property damage against Geico Liability. Geico Liability determined that Pelle's vehicle was totaled in the collision and forwarded a letter dated July 21, 2017, to Pelle containing the total loss settlement explanation that the net settlement amount was $13,087.00, including the value of the vehicle, a condition adjustment, and taxes. That letter referenced claim number 059626806-0102-022. On July 31, 2017, Pelle signed a bill of sale-power of attorney enabling Geico Liability to obtain title to the vehicle. That document also referenced claim number 059626806-0102-022 and was notarized by Pelle's attorney. As the liability insurer of Munos, Geico Liability paid Pelle's total loss settlement to the lienholder, as well as approximately a month of rental car expense under the property damage liability coverage of the Munos policy. Pelle testified by deposition that Geico provided a rental car for him for one month. He kept that car for two additional months and paid for the rental car charges himself. A rental car bill submitted into evidence shows the amount Pelle paid from August 25, 2017 through November 17, 2017. Geico Collision asserts that Pelle's rental car bill was

2

paid by Geico Liability from July 17, 2017, until August 24, 2017,[1] which is confirmed by Pelle's testimony. Therefore, Pelle's rental car expenses were paid by Geico Liability for approximately 25 days after the bill of sale-power of attorney was signed by Pelle on July 31, 2017. Geico Liability advised counsel for Pelle by letter dated September 15, 2017, that the property damage to Pelle's vehicle had been handled under claim number 059626806-0102-022, where Pelle was a third-party claimant and no deductible was withheld from the payment. Furthermore, Geico Liability paid the tax and title amount to the lienholder.

Pelle filed suit in this matter on September 27, 2017, specifically naming as defendants Munos and Geico Liability. Although Geico Collision was not specifically named as a defendant, Pelle asserted that Geico Collision had issued him a policy of insurance for property damage and failed to submit payment to him more than thirty days after his submission of proof of claim. Pelle sought his deductible, tax and registration fees, the full amount of all property damage, all the rental car fees he paid, plus bad faith penalties and attorney's fees for the denial of his claim.

Geico Liability answered the suit claiming that Pelle made a claim for property damages against Munos's Geico liability policy, and it was handled under claim number 059626806-0102-022. Geico Liability also asserted that the bill of sale-power of attorney signed on July 31, 2017, referenced claim number 059626806-0102-022, which Pelle signed and his attorney notarized.

On November 6, 2017, Geico Collision filed its own answer, asserting that no claim had ever been submitted under the policy of insurance issued to Pelle, and that all payments made by Geico Liability were pursuant to the policy issued to Munos.

---

[1] Geico Collision actually references the end date of payment as August 25, 2017. However, the rental car bill submitted into evidence shows that Pelle began paying for the rental car on August 25, 2017.

On August 16, 2018, Pelle dismissed all bodily injury claims against Munos and Geico Casualty Company (in its liability capacity), reserving his rights against Munos, Geico Casualty Company, and any party related to or arising from the property damage to his vehicle. On September 18, 2018, Geico Collision filed a motion for summary judgment, claiming that Pelle had been fully compensated for his property damage from Geico Liability, that he was not entitled to duplicative payment from Geico Collision, that the collateral source rule does not apply to Pelle's claim for collision coverage, and that any property damage claims against Geico Collision should be dismissed. Geico Collision attached several documents to its motion for summary judgment, including, the deposition of Pelle with several attached exhibits, including a vehicle application, the July 21, 2017 letter of total loss explanation, the bill of sale-power of attorney, the rental car bill evidencing the amount Pelle paid, and the policy of insurance issued to Pelle.

Pelle opposed Geico Collision's motion for summary judgment and filed a counter motion for summary judgment, asserting that the property collision coverage on his vehicle is a collateral source; that Geico Collision has no legal or conventional subrogation for the damages related to Munos's liability policy; that Geico Collision failed to adjust claims fairly and promptly and failed to make a reasonable effort to settle claims in violation of La. R.S. 22:1973(A); that Geico Collision misrepresented pertinent facts in violation of La. R.S. 22:1973(B); that Geico Collision failed to make a written offer to settle any property damage claim within thirty days of receipt of satisfactory proof of the loss in violation of La. R.S. 22:1892; and that Pelle could receive a double recovery from a collateral source for which he has given consideration, including under an insurance policy. Pelle attached several documents to his motion for summary judgment, including his own affidavit, the September 15, 2017 letter from Geico, Pelle's amending and

4

supplemental petition, the July 21, 2017 letter from Geico, and discovery responses from Geico Collision.

The trial court heard both motions for summary judgment on October 30, 2018, and orally granted Geico Collision's motion for summary judgment and denied Pelle's cross motion for summary judgment. In accordance with its oral ruling, the trial court signed a judgment dismissing the claims of Pelle against Geico Collision on November 13, 2018. It is from this judgment that Pelle appeals.[2]

## ASSIGNMENT OF ERROR

In his only assignment of error, Pelle contends that the trial court wrongfully granted Geico Collision's motion for summary judgment, wrongfully denied Pelle's motion for summary judgment, and wrongfully dismissed Pelle's petition for damages and penalties.

## SUMMARY JUDGMENT

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In reviewing the trial court's decision on a motion for summary judgment, this court applies a *de novo* standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Reynolds v. Bordelon*, 2014-2371 (La. 6/30/15), 172 So. 3d 607, 610.

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents

---

[2] The denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law. However, where there are cross motions for summary judgment raising the same issues, this court can review the denial of a summary judgment in addressing the appeal of the granting of the cross motion for summary judgment. *See Crowe v. Bio–Medical Application of Louisiana, LLC*, 2014-0917 (La. App. 1st Cir. 6/3/16), 208 So. 3d 473, 479-80 n.6; *MP31 Investments, LLC v. Harvest Operating, LLC*, 2015-0766 (La. App. 1st Cir. 1/22/16), 186 So. 3d 750, 755.

show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).

The mover bears the burden of proving that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent's claim, action, or defense. La. C.C.P. art. 966(D)(1). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); *Holmes v. Lea*, 2017-1268 (La. App. 1st Cir. 5/18/18), 250 So. 3d 1004, 1009.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Janney v. Pearce*, 2009-2103 (La. App. 1st Cir. 5/7/10), 40 So. 3d 285, 289, *writ denied*, 2010-1356 (La. 9/24/10), 45 So. 3d 1078. A genuine issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree; if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Kasem v. State Farm Fire & Cas. Co.*, 2016-0217 (La. App. 1st Cir. 2/10/17), 212 So. 3d 6, 13.

6

Interpretation of an insurance policy usually involves a legal question that can be resolved properly in the framework of a motion for summary judgment. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. *Prejean v. McMillan*, 2018-0919 (La. App. 1st Cir. 2/28/19), 274 So. 3d 575, 578.

## LAW AND DISCUSSION

### Double Recovery, Collateral Source Rule, and Subrogation

In its motion for summary judgment, Geico Collision avers that despite the fact that Pelle has already been paid the full value of his vehicle by Geico Liability, he now seeks recovery from Geico Collision, as his own insurer. Geico Collision maintains that if it is made to pay Pelle additional collision damages, he would recover twice for the same damages. We note that "Louisiana law does not allow for double recovery of the same element of damages." *Albert v. Farm Bureau Ins. Co.*, 2005-2496 (La. 10/17/06), 940 So. 2d 620, 622. In *Albert*, the plaintiff attempted to argue that the sheriff had appeared in two different capacities, so that payment in one capacity did not create double recovery. The Louisiana Supreme Court recognized that such a distinction in capacities was irrelevant for purposes of the prohibition against double recovery and stated:

> [W]e find it is of no moment that [the sheriff] may have paid medical benefits under a different capacity than the capacity in which he was cast in judgment. The fact remains that plaintiffs have been compensated for [the deputy's] medical expenses and cannot be compensated twice for the same element of damages.

*Albert*, 940 So. 2d at 623-24.

7

Furthermore, in *Gagnard v. Baldridge*, 612 So. 2d 732, 736 (La. 1993), the Louisiana Supreme Court held that the defendant who appeared in two separate capacities (employer and tortfeasor) was entitled to a credit for disability benefits and medical expenses paid to the plaintiff under the worker's compensation act against the amount of wages and medical expenses awarded to the plaintiff in tort.

"[W]hile an insured may not recover in excess of his actual loss, an insured may recover under each policy providing coverage until the total loss sustained is indemnified." *Cole v. Celotex*, 599 So. 2d 1058, 1080 (La. 1992). It is equally clear that a plaintiff is not entitled to double recovery for the same elements of damages. *Wegener v. Lafayette Ins. Co.*, 2010-0810 (La. 3/15/11), 60 So. 3d 1220, 1235.

Numerous federal cases following Hurricane Katrina addressed the issue that an insured, even if having paid for additional property damage coverage, was still prohibited from recovering more than the value of the property damage.

> An insured party in Louisiana may generally "recover under all available coverages provided that there is no double recovery." The fundamental principle of a property insurance contract is to indemnify the owner against loss, that is "to place him or her in the same position in which he would have been had no [accident] occurred." Consequently, "while an insured may not recover in excess of his actual loss, an insured may recover under each policy providing coverage until the total loss sustained is indemnified." (Citations omitted).

*Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 521 (5th Cir. 2010). In *Weiss v. Allstate Ins. Co.*, 06-3774, 2007 WL 891869, at *3 (E.D. La. 3/21/07), the court recognized the well-established principle that insurance contracts are contracts of indemnity and that an insured cannot recover an amount greater than his loss. Both *Webster v. State Farm Fire & Casualty Ins. Co.*, 07-4812, 2008 WL 2080907, at *4 (E.D. La. May 14, 2008), and *Wellmeyer v. Allstate Ins. Co.*, 06-1585, 2007 WL 1235042, at *2 (E.D. La. April 26, 2007), recognized that plaintiffs could not enjoy a double recovery for the same lost property under their homeowners and flood

policies even though they had paid for both coverages. *Louque v. State Farm Fire & Cas. Co.*, 06-2881, 2007 WL 1343636, at *2 (E.D. La. May 4, 2007), recognized that an insured cannot recover twice for the same loss.

In *Dauphin v. Lafayette Ins. Co.*, 2001-1236 (La. App. 3rd Cir. 2/6/02), 817 So. 2d 144, 148, an insured couple collected property damage from their collision insurer and the husband received a check for the property damage from the tortfeasor's liability insurer. The court held that when a collision insurer paid the property damage of its insured, after a liability insurer had already paid the same damages, the collision insurer had paid an obligation that had already been extinguished by payment. A thing is not owed when it is paid or delivered for the discharge of an obligation that did not exist. *Dauphin*, 817 So. 2d at 148 (citing La. C.C. art. 2300). The insureds had received checks and cashed them from both their collision insurer and the liability insurer of the tortfeasor. The court held that the insureds were not entitled to double recovery and that the collision insurer's recourse was against the insureds. *Dauphin*, 817 So. 2d at 148.

If Geico Collision were to pay Pelle's property damages for his vehicle, he would obtain a double recovery for the same damages since he has already received those damages from Geico Liability.[3]

Pelle asserts that he is entitled to double recovery due to the collateral source rule. He argues that because he paid for collision coverage, this coverage is a collateral source, which obligates Geico Collision to pay the full value of the vehicle to him even though Pelle was fully compensated for the value of the vehicle by the tortfeasor's liability policy payment to the lien holder.

---

[3] With regard to the rental car charges, Pelle's own policy provides that rental reimbursement ceases when the insured vehicle is deemed a total loss either (1) 72 hours after the limit of liability is paid under the property damage section of the policy or (2) 72 hours after the initial settlement offer, whichever comes first. Since Geico Liability extended rental reimbursement in excess of these time periods, Pelle has also been fully compensated for his rental car expenses.

The collateral source rule is a rule of evidence and damages that is of common law origin, yet embraced and applied by Louisiana courts. *Bozeman v. State*, 2003-1016 (La. 7/2/04), 879 So. 2d 692, 697. The Louisiana Supreme Court in both *Bozeman*, 879 So. 2d at 697, and *Louisiana Dept. of Transp. and Dev. v. Kansas City Southern Ry. Co.*, 2002-2349 (La. 5/20/03), 846 So. 2d 734, 739, cited the Restatement (Second) of Torts §920A (1979) as source material for the collateral source rule. Restatement (Second) of Torts §920A provides:

(1) A Payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.

(2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. *Bozeman*, 879 So. 2d at 698. Hence, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer, and, a tortfeasor's liability to an injured plaintiff should be the same, regardless of whether or not the plaintiff had the foresight to obtain insurance. *Bozeman*, 879 So. 2d at 698. As a result of the collateral source rule, the tortfeasor is not able to benefit from the victim's foresight in purchasing insurance and other benefits. *Bozeman*, 879 So. 2d at 698. The primary policy reason for the application of the collateral source rule is tort deterrence. The rule reflects the beliefs that the tortfeasor should not profit from the victim's prudence in obtaining insurance, and that by reducing the amount the tortfeasor would have to pay, the deterrent effect of the law would be hampered. *Cutsinger v. Redfern*, 2008-2607 (La. 5/22/09), 12 So. 3d 945, 952.

*Voth v. State Farm Fire & Cas. Ins. Co.*, 07-4393, 2009 WL 498625, at *3 (E.D. La. Feb. 19, 2009), addressed the same argument made by Pelle in this case and stated:

> Plaintiff also contends that the collateral source doctrine prevents State Farm from applying an offset for the payments under the flood policy. Judge Africk rejected this contention in *Webster v. State Farm Fire & Casualty Insurance Co.* opining that "[b]ecause insurance contracts are contracts of indemnity and do not allow double recovery, the collateral source rule cannot be used to permit Webster to recover for the same losses under both policies." *Id.* at n. 20. Judge Africk's reasoning is persuasive.

In the present case, the tortfeasor, having already paid the property damage claim, seeks no credit for the benefits paid. The tortfeasor will reap no benefits if the collateral source rule is not applied. Rather, as indicated previously, Pelle, having been fully compensated by the tortfeasor for his damages seeks double recovery. Geico Collision is not the tortfeasor, nor does it stand in the shoes of the tortfeasor. Pelle's tort recovery has not been diminished due to benefits received by him from sources independent of the tortfeasor's procuration or contribution. Application of the collateral source rule in this case would not further the major policy goal of tort deterrence, and we find that application of the rule would result in a windfall or double recovery to Pelle. *See Cutsinger*, 12 So. 3d at 955.

Pelle further argues that *Rogers v. Graves*, 2006-0648 (La. App. 1st Cir. 2/21/07), 959 So. 2d 990, 995, *writ denied*, 2007-0939 (La. 6/22/07), 959 So. 2d 500, is applicable to the facts of this case. However, we find *Rogers* to be distinguishable. In that case, Allstate Insurance Company provided collision coverage to the plaintiff (Allstate Collision) and liability coverage to the tortfeasor (Allstate Liability). Allstate Collision paid the plaintiff's property damage resulting from a vehicle accident with the tortfeasor. At trial, Allstate Liability sought a credit for the property damage paid by Allstate Collision. The plaintiff asserted the collateral source rule, seeking to deny Allstate Liability the credit

sought. This court held that the trial court erred in failing to apply the collateral source rule. However, the ruling in *Rogers* was based on the fact that the insurance policy between Allstate Collision and the plaintiff was not introduced into evidence; therefore, there was no evidence that Allstate Collision had any right of subrogation. *Rogers*, 959 So. 2d at 995.

Further, the issue in *Rogers* was whether the **tortfeasor** was entitled to a benefit obtained by the plaintiff purchasing her own insurance. In the present case, the tortfeasor is not seeking a credit. Here, the Geico policy evidencing the subrogation rights of Geico Collision has been introduced into evidence. When subrogation is proven, the plaintiff may recover only his remaining interest in a partially subrogated claim. *Southern Farm Bureau Cas. Ins. Co. v. Sonnier*, 406 So. 2d 178, 180 (La. 1981); *see also* La. C.C.P. art. 697. Therefore, *Rogers* is not controlling in the present case.

Pelle has pointed this court to no cases that apply the collateral source rule to mandate that an insurer make a payment to an insured even though the total loss has been fully compensated by a tortfeasor. Similar to *Dauphin*, if Geico Collision is forced to pay Pelle for the property damage to his vehicle, it will be for an obligation that does not exist. Therefore, nothing is owed by Geico Collision as the obligation has been discharged. *See* La. C.C. art. 2300.

Further, subrogation is an exception to the collateral source rule. *Great West Cas. Co. v. State ex rel. Dept. of Transp. & Dev.*, 2006-1776 (La. App. 1st Cir. 3/28/07), 960 So. 2d 973, 976, *writ denied*, 2007-1227 (La. 9/14/07), 963 So. 2d 1005. Thus, the collateral source rule is inapplicable where the right of subrogation is involved, even if the party subrogated does not appear to assert its subrogation rights and the defendants do not timely object to the nonjoinder of the necessary party. *Id.* Pelle avers that under either policy issued by Geico, it has no

right of conventional or legal subrogation for property damage.[4] We also find this argument to be without merit. Section III of the policy issued to Pelle is entitled "Physical Damages Coverages" and Geico agreed to pay for collision losses to the insured vehicle. Under Section III, the policy contains a section entitled "Conditions." One of those conditions is subrogation, which states:

>    9.    SUBROGATION
>    If we make payment under the policy and the insured has a right to recover damages from another, we shall be subrogated to that right. However, our right to recover is secondary to the insured's right to be compensated fully for his damages.
>
>    * * *
>
>    This means we will have the right to sue for or otherwise recover the payment we have made from anyone else who may be responsible.

Pelle relies on *Molony v. United Servs. Auto. Ass'n*, 96-1747 (La. App. 4th Cir. 11/6/96), 683 So. 2d 891, 893-94, *writ denied*, 96-2915 (La. 2/21/97), 688 So. 2d 516, which discussed the Louisiana Supreme Court case *Fertitta v. Allstate Insurance Company*, 462 So. 2d 159 (La. 1985), involving the applicability of the collateral source rule between an uninsured motorist carrier and a tortfeasor. The *Fertitta* court considered whether a tort victim's judgment against a tortfeasor for the full amount of damages should be reduced by the amount of the victim's settlement with his uninsured motorist carrier, when the carrier has waived rights of reimbursement or subrogation. The court found that the plaintiff's uninsured motorist carrier and the tortfeasor were solidarily liable and declined to apply the collateral source rule. The court differentiated between uninsured motorist coverage and other types of first party coverage. The court in *Fertitta* stated:

---

[4] Despite the arguments of both parties regarding both policies in this case, the only policy relevant to the right of subrogation is the policy issued to Pelle. Although Geico Collision argues that the subrogation clause in the policy issued to Munos is relevant, that clause permits subrogation if Geico made a payment "and the insured for whom payment was made has a right to recover damages from another." Munos, the tortfeasor, does not have a right to recover damages from another. Therefore, the subrogation clause in the Munos policy is not relevant. It is the subrogation clause contained in the Geico Collision policy that is relevant to determine whether a right of subrogation existed. *See Rogers*, 959 So. 2d at 995.

Louisiana law requires motorists to carry liability insurance, and the uninsured motorist law requires liability insurers to include uninsured motorist coverage (unless expressly rejected by the insured).

Because liability for the damages caused by the tortfeasor is imposed by law on the uninsured motorist carrier, that insurer is solidarily liable with the tortfeasor to repair those damages. In the case of medical payments or collision coverage, because only the contract (and not the law) imposes the obligation on the insurer to repair some of the damages caused by the tortfeasor, there arguably is no solidary liability. ... Therefore, while the collateral source rule perhaps would apply to payments under medical payments or collision coverage **(in the absence of a subrogation agreement)**, the rule does not apply to payments under uninsured motorist coverage.

*Fertitta*, 462 So. 2d at 164 n.7 (emphasis added). We disagree that the above quoted language is controlling in the present case as we have found that a subrogation clause was contained in the policy issued to Pelle.

Pelle asserts that Geico Collision has no conventional subrogation rights because it has not made a payment under the policy.[5] Due to the fact that Pelle initially made his claim against the tortfeasor and was fully compensated, it is true that Geico Collision did not make any payments under the policy. In the event that payment had first been first sought under the Geico Collision policy, Geico Collision would have clearly had the right of subrogation pursuant to the insurance contract. Pelle cannot defeat Geico Collision's subrogation rights by first making a claim under the tortfeasor's policy and then demanding duplicate recovery.

As we have found no case directly on point where a plaintiff has accepted payment from the tortfeasor and then sought the same payment from his own insurer, it is helpful to look to the manner in which other jurisdictions have resolved this issue. *Benge v. State Farm Mut. Auto. Ins. Co.*, 297 Ill. App. 3d 1062, 1072, 697 N.E.2d 914, 921 (1998), *app. denied*, 179 Ill. 2d 576, 705 N.E.2d 433 (1998), involved similar arguments to those made by Pelle. The plaintiffs

---

[5] Pelle also asserts that Geico Collision has no rights of legal subrogation. The issue of legal subrogation in this matter is governed by La. C.C. art. 1829. Having found the contract of insurance contains a subrogation clause, we pretermit a discussion of this issue.

14

purported to represent the class of persons holding automobile insurance policies issued by State Farm who sustained damage to their vehicles when they were involved in accidents with persons also insured by State Farm and who were not paid for those damages by State Farm both under the liability coverage contained in the tortfeasors' insurance policies, and pursuant to the physical damage coverage contained in their own insurance policies. The court determined that State Farm's single payment of the plaintiffs' total damages to be nothing more than the simultaneous discharge of its contractual obligations to both the plaintiffs and the tortfeasors along with the exercise of its subrogation rights under the plaintiffs' insurance policies. *Benge*, 297 Ill. App. 3d at 1072, 697 N.E.2d at 921. In *Logue v. Clarendon Nat. Ins. Co.*, 777 So. 2d 1122, 1125 (Fla. Dist. Ct. App. 2001), the insured sought to recover from his collision insurer for property damage. The court held that the insured had settled his property damage claim with the tortfeasor and could not recover twice for the same damages. The court noted that the insurer had a subrogation right to recover those damages.

Therefore, in the present case, we conclude that Geico Collision did have a subrogation agreement and would have clearly had the right of subrogation pursuant to the insurance contract. Geico Liability's payment under its policy discharged the liability of Geico Collision. *See Dauphin*, 817 So. 2d at 148.

Pelle is not entitled to double recovery of the same property damages from Geico Collision that he has already received from Geico Liability. While the collateral source rule does in certain instances permit double recovery to a plaintiff, we have found the collateral source rule is inapplicable under the specific facts and circumstances of this case. For the above and foregoing reasons, Pelle cannot recover the damages he now seeks.

## Damages, Penalties, and Attorney's Fees

Pelle argues that he is entitled to damages, penalties, and attorney's fees pursuant to La. R.S. 22:1973 and La. R.S. 22:1892. He claims that numerous demands were made for payment, the last being the amending petition on July 13, 2018. Pelle also asserts that satisfactory proof of loss was made to Geico Collision on July 21, 2017.

The prohibited conduct under La. R.S. 22:1973 and La. R.S. 22:1892 is virtually identical: the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause. *Reed v. State Farm Mutual Automobile Ins. Co.*, 2003-0107 (La. 10/21/03), 857 So. 2d 1012, 1020. The primary difference between these two statutes is the different time periods allowed for payment, thirty days under La. R.S. 22:1892 and sixty days under La. R.S. 22:1973. *Reed*, 857 So. 2d at 1020. Because these two statutes are penal in nature, they are strictly construed. *Reed*, 857 So. 2d at 1020.

In order to recover under La. R.S. 22:1973 and La. R.S. 22:1892, a plaintiff must first have a valid, underlying, substantive claim upon which insurance coverage is based. *Clausen v. Fidelity and Deposit Co. of Maryland*, 95-0504 (La. App. 1st Cir. 8/4/95), 660 So. 2d 83, 85, *writ denied*, 95-2489 (La. 1/12/96), 666 So. 2d 320). The penalties authorized by these statutes do not stand alone; they do not provide a cause of action against an insurer absent a valid, underlying insurance claim. *Clausen*, 660 So. 2d at 85. Furthermore, breach of contract is a condition precedent to recovery for the breach of duty of good faith, and we agree with the trial court that Geico Collision did not breach its insurance contract with Pelle. *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 363 (5th Cir. 2010). Therefore, we agree with the trial court's dismissal of the bad faith claims of Pelle.

16

## CONCLUSION

For the above and foregoing reasons, we affirm the trial court's November 13, 2018 judgment granting summary judgment in favor of Geico Casualty Company dismissing all claims of Justin Dewane Pelle and denying the cross motion for summary judgment filed by Justin Dewane Pelle. All costs of this appeal are assessed to Justin Dewane Pelle.

**AFFIRMED.**